Good morning, Your Honors. Doug Kellock from Federal Defenders on behalf of Defendant Appellant Espinoza-Morales. I also plan to try to reserve two minutes of my time for rebuttal, so I'll keep my eye on the clock. The district court committed reversible error in this case when it erroneously determined that Mr. Espinoza had previously been convicted of a forcible sex offense, as that term is defined in the guidelines. In the government's briefing, we contended that both the categorical and modified categorical approaches supported the district court's decision, but my understanding from talking to government counsel this morning is they plan to concede that the categorical approach doesn't establish that this is a forcible sex offense. And I think that's clear because you can commit this offense. It's just not categorically. That's right. So unless the court has questions in that approach, I'll go to the modified categorical approach. And according to the government, the modified categorical document here is an unpublished court of appeal decision. And there are two reasons why that document is not a valid Shepard document. The first is that under Taylor and Shepard, it doesn't establish what facts the jury was required to find. And second, it's not sufficiently reliable under Strickland and Schellenberger. I'll start with the first issue, which is more fundamental, is this document fundamentally does not show what facts the jury was required to find. And that requirement is in both Taylor and Shepard, where both those cases hold that even jury trial transcripts, which are surely the most reliable form of determining what facts came out at trial, aren't sufficient. And that's because even though those facts will show what the defendant actually did, it won't show what the jury convicted him of. To determine what the jury convicted the defendant of, you have to look at either the jury's verdict or the jury instructions, or at least something that purports to describe one of those two documents. Here, this document doesn't purport to describe how the jury was convicted. What does the indictment charge him with? The indictment discharges him under the statutory language in the conjunctive. With anal and genital penetration by a foreign object forcing violence, right? That's right. And then they continue to put it on. Then they found him guilty. That's right, Your Honor. And then the court of appeals in their description of the event described the headlock and what had occurred. That's right, Your Honor. And what about Strickland, the new case? Does that give you pause? Well, it doesn't, Your Honor. But just if I could sort of back up a bit, the indictment does give that description you just said. But I think that the description you just gave is simply a shorthand for the crime. After it gives that shorthand description, it then goes on to describe all the elements of the offense, including duress. And so it's likely in this case, although we don't know, is that the jury was given a general jury verdict. And I think I cite to my opening brief a case that says under California law, defendants are charged in the conjunctive, but they can be convicted in the disjunctive. The court of appeals then described the event, did they not? They did describe the event. And you don't think we can use that, or he can use that? No, Your Honor. Even after Strickland? Even after Strickland, Your Honor. Well, for Strickland, doesn't ‑‑ Strickland doesn't address the first fundamental problem, that these facts don't show what the jury was required to find. In the same way, if we had the jury trial transcripts, with this indictment, it wouldn't be sufficient, because the jury was never asked to find that those facts actually happened. Instead, it was likely to simply ask, did he use force, violence, duress, or the other methods in the statute? And ultimately, they convicted him based on what was likely a general verdict. But even under Strickland, Strickland sets out a three‑part reliability test. And this document doesn't meet any of those factors. I'll start with the last factor first. I think that's the most important. And that factor is that the defendant had the right and the ability to correct the document. So in Schellenberger, it was the minute order, and in Strickland, it was the docket sheet. And in both those cases, this court cited to a statute that gave the defendant the right and the ability to correct that document. But as this Court knows, defendants have no right to correct court of appeals decisions, especially when it's to nonmaterial issues in the opinion. If this Court issues an unpublished opinion in this case and makes a mistake, I have no right to say, no, you made this mistake in describing the facts, if those facts aren't relevant to your disposition. Could an objection have been made at the time of sentencing? The sentencing in this case, Your Honor? Uh‑huh. In what way? Say you're relying on an unpublished opinion that you shouldn't be relying on. Well, Your Honor, we did object that this wasn't a ‑‑ this shouldn't be a 16-level increase. We didn't give this precise argument we're giving now. But you don't have to preserve arguments in district court. You just need to preserve the issue. And the issue here is whether this prior conviction is a forcible sex offense under the categorical or modified categorical approaches. And I think we certainly conveyed to the district court that we thought you should not give a 16-level increase. But also to go back to your concerns about Strickland, not only do ‑‑ not only are litigants not able to correct nonmaterial facts or nonmaterial issues in a court of appeal decision, I don't think the court of appeals is under any obligation to get the facts right in an unpublished opinion. I mean, that's the reason why this court ‑‑ there was a lot of controversy of whether you can cite unpublished opinions. We think we do have an obligation to get the facts right. Maybe we don't always get them right, but we do have such an obligation. Well, Your Honor, I think you have a professional obligation, of course, but I don't think there's any legal obligation. I think there's even a legal obligation. Well, Your Honor, if there were some sort of legal obligation, that would mean if you misdescribe the facts in this case or any other, I could file a petition for rehearing saying, hey, these nonmaterial facts in your unpublished decision are wrong. And I don't think you're under any obligation. Sure you could. Sure you could. And if they were determinative, you'd probably get your rehearing, wouldn't you? Well, if they were determinative, yes, Your Honor. But here they're not determinative. And I think that's an important distinction. I mean, when this court issues a ‑‑ Well, I will follow up on what Judge Fletcher said. You know, just in one of my own recent cases, the parties objected to the way in which we characterized the facts in the opinion. And I thought the objection was well taken. It wasn't a petition for rehearing. It was just a letter that they sent to the court. Certainly. We withdrew the ‑‑ not only did we correct it, but we withdrew the opinion and issued a new one to relate the facts in a more accurate way. Well, certainly, Your Honor. I understand that that happens from the ‑‑ It does happen. So they do have an ‑‑ they can object. Well, certainly, we can file a petition for rehearing on, you know, any ‑‑ for any reason we want to. But, you know, for instance, when this court issues an opinion, we get a letter saying you can file a petition for rehearing. And among the bases are if the facts are wrong. But it specifically says only if the material facts are wrong. I don't think this court wants to get a petition for rehearing in every single unpublished case where ‑‑ Let me ask you this. Is it your position that a court ‑‑ that an unpublished court of appeal opinion from any state in the circuit can never form a document that we can rely upon? No. There could be, for instance, a particular state had specific rules allowing for a party to object under any basis. That would at least potentially solve the reliability problem. But you still have a more fundamental problem of whether it shows what the jury was required to find. So, for instance, if the issue on appeal was whether the jury was properly charged or whether the jury verdict properly found a conviction under the statute, then fine. In that issue, the court would be ‑‑ the court opinion would establish what facts the jury was required to find. But here there's no issue of the jury's verdict. There's no issue of the jury instruction. So it isn't ‑‑ in the same way that jury trial transcripts aren't sufficient, a court of appeal decision purporting to describe, or at least partially describe the evidence isn't sufficient. I think the Court has no further questions. Do you want to save time for one more? I do, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. Sheila Nagaraj on behalf of the United States. Just to follow up on two of the two main points that defense counsel was making. It is the government's position today that this document in question, the unpublished state court opinion, is valid for being considered when a district court or trial court is using the modified categorical approach. And ‑‑ Would this be the first case that held that? I believe so, Your Honor. Certainly within the circuit, and I was unable to find a case outside of the circuit as well where a document like this has been considered. But I believe the argument is sound for several reasons. In parts, first because of the Snellenberger three‑part test, but more clearly now as it's been elucidated by the en banc court in Strickland from two weeks ago in the opinion written by Judge Callahan. First, this document, we believe, falls squarely within the zone that's been expanded by Strickland. It's a state appellate court opinion. It has the requisite indicia of reliability that a court would be looking for in determining the nature of the underlying conviction that the defendant was convicted of. The defense counsel point ‑‑ or tends to make the point that it doesn't show ‑‑ it doesn't show exactly what the jury convicted defendant of. However, I would argue here that it effectively rules out that defendant was committed ‑‑ I'm sorry, the defendant was convicted of the offense in any of the non‑violent, non‑forcible means. There's the findings of fact as presented by the appellate court here. No, but I believe there's a section titled that within the appellate court opinion. And it describes, as Judge Walter mentioned, it describes exactly the mechanism used by the defendant when he committed the offense. There's no evidence of trickery. There's no evidence of deception. There's no evidence of elaborate con man scheme. This is force, pure and simple. He grabbed her. He put her in a headlock. He tightened his grip while she was resisting. And he committed the offense of forcible rape. He rubbed his finger against her vagina and penetrated her. There's no question that this was a forcible sex offense under the ordinary contemporary meaning. I guess the critical question would be one of these facts were necessary if the jury was going to convict. I'm sorry, I didn't understand your question, Your Honor. I think that what we need to be thinking about is what facts would be necessary in order for the jury to convict. I agree. So tell us what those facts would be that would be necessary for the jury to convict. Well, would be necessary for the jury to convict in order to prove that this enhancement applies. I believe is what our position is that the offense was committed only through forcible means. And that's what these facts that the appellate court opinion presents. Now, what was the jury instruction that would lead you to that statement? I don't. I'm attempting at this point to try to get a copy of those jury instructions. The model jury instructions are in the disjunctive, and they include the non-forcible means such as duress, which is what appellant's point is, that an individual could be convicted under duress. And there are California state court cases that say as much. But in this case, there's absolutely zero evidence of that. And again, that's what this appellate court opinion written by a panel of three judges such as yourselves. It's a careful, well-reasoned opinion. And I disagree with defense counsel's contention that it doesn't have the appropriate level of reliability. We're not just talking about a court official here, a clerk of court. We're talking about three appellate court judges whom, as you pointed out, Judge Fletcher, absolutely have a professional and legal obligation to get the facts right. And as Judge Pius pointed out, when there are issues with the facts, parties are and should be encouraged to file their objections. Even in a case like this where the appeal itself was not on the sufficiency of the evidence, appellant absolutely could have filed a petition for panel rehearing. And based on the holdings in Sullenberger and Strickland, which have already, in our view, somewhat expanded the responsibilities of defense counsel to check and make sure that the docket sheet is correct and to make sure that the facts are accurate and to object when that's not the case. It's our position that a holding in favor of the government today would not significantly expand that obligation and, in fact, just ensure that the facts are correct and that defendants and their counsel are aware of their obligation to make sure of that. You don't have the jury instructions. I would feel a lot more comfortable if I understood what the jury had to determine. Absolutely, I understand, Your Honor. Again, as I said, the model instructions are in the disjunctive. We're trying to obtain the jury instructions now from the County of San Bernardino where the defendant was convicted. And if the court does find in favor of appellant, the government would request an opportunity to have this remanded on an open record at resentencing. And so if the government, I'm sorry, if the court has no further questions, just to conclude, we believe that this document is not only admissible under the modified categorical approach, but it is inherently reliable and it meets all of the requirements as set forth by Sheppard and then Snellenberger and now Strickland. And it has the added benefit of suffering from none of the defects that, for example, that Judge Brisson was concerned about in Strickland. This isn't a document that's typically going to be error-prone or have substantive errors such as docket sheets often do, as she points out. So I'm sorry. Your position is that even if they used the standard jury instructions and talked about duress, that the evidence of the case is such and the court of appeals found that that wasn't a factor. It had to be violence. Absolutely, Your Honor. There's no other explanation here. There's no, absolutely no suggestion that this was committed through any non-violent, non-forcible means. There's no suggestion of duress in any way. Everything about the facts and the evidence in this case point to only one conclusion, that the appellant committed this offense using force exclusively, whether it was the part where we know about how he put her in a headlock, how she tried to resist and could not, how she tried to use her elbow and couldn't escape. Defendant committed a heinous, forcible sex offense under any definition of the word force. If the panel has, if the court has any. Counsel said that you were only looking at this through the modified categorical approach and that the government does not argue now that it satisfies the categorical approach. Yes, Your Honor, we don't believe it satisfies the categorical approach here. While certainly it's an intellectually defensible position, for example, the Fifth Circuit in Gomez Gomez held that this exact statute was a forcible sex offense in part because of the notion of using force or using any amount of force that would overcome the victim's will, as Judge Tallman's concurring opinion in Beltran-Mungua pointed out. We believe that based on the current law in this circuit that it's not a position that we can advance with respect to this case. Thank you. I think the government, the defense have, I'll give you a minute for rebuttal. Thank you, Your Honor. Two quick points. First, the government's argument that we know what the defendant did in this case is the exact argument the Supreme Court rejected in both Taylor and Shepard. In both those cases, we knew what the defendant had done. So, for instance, in Shepard, I believe the issue was the way in which a robbery occurred or a police report, there was no issues of reliability. And the court still in both those cases said that this, we can't narrow the statute based on these facts. Why? Because the issue is what the jury or the defendant, what the jury was required to find or what the defendant admitted. They drew the distinction between what the defendant was convicted of and what the defendant was committed. I'm sorry, what the defendant committed. And here the government is just trying to rely on what the defendant actually committed as opposed to what the jury was required to find. And since we don't know what the jury was asked to find, we can't simply say, well, they must have found he used force based on this partial description of the facts in the court of appeal decision. And the government has no response to it. The position is identical to simply saying we can rely on jury trial transcripts. And the court rejected that argument in both Taylor and Shepard. And the government has never responded to that point. But that point makes sense once you draw the distinction between what the defendant committed, which we know what he committed in the jury trial transcript, and what the defendant was convicted of. And jury trial transcripts don't show what the defendant was convicted of. Finally, if this Court ultimately decides that it should remand, a remand should be with a closed record. Under this Court's, excuse me, en banc case in Matthews, the Court held that generally remand should be open. But an exception to that was when a party had an evidentiary burden, they produced evidence and didn't submit enough. They don't get a second bite of the apple. That's exactly what happened in this case. The government had an evidentiary burden under the modified appraisal. When was he convicted? In 2000? I believe so, Your Honor. No, before that. The court of appeal opinion is in 2000. You know, it's not easy to get records from the superior court of, where was this? San Bernardino, I suspect. That's true, Your Honor. But they still bore the evidentiary burden. They put a lot of this stuff in storage. And after a certain period of time, you know, there are no records. They destroy them after a while. That's right, Your Honor. And all they're left with is an abstract of judgment. And in this case, the result of that is that the client shouldn't get a plus 16. So the Court has no further questions. Thank you. Thank you for the arguments. We appreciate them. Interesting case.
judges: Walter, Fletcher B. , Paez